UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| GLORIA D. GRAY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:07-CV-00374 |
| | ) | |
| FEDERAL EXPRESS CORPORATION | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the court is Defendant Federal Express Corporation's ("FedEx") Motion for Summary Judgment filed on August 14, 2008. Plaintiff Gloria D. Gray ("Gray") responded on October 8, 2008 to which FedEx replied on October 27, 2008. Along with its reply, FedEx also filed a "Motion to Strike the Affidavit Testimony Presented By Plaintiff." Gray did not respond to that motion. For the following reasons, FedEx's Motion for Summary Judgment will be GRANTED. The Motion to Strike will be GRANTED to the extent indicated in footnoted text.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the

plaintiff." *Id*. at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992)(quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986)).

Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute because the issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id*. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512. Mindful of these principles the court turns now to the case at hand.

## **FACTUAL BACKGROUND**[1]

FedEx hired Gray in September 2000 as a part-time Handler at FedEx's station in South Bend, Indiana (the "South Bend Station"). In August 2002, FedEx employed Gray in a full-time position. As part of her job duties, Gray was required to pick up bulk shipments of packages from

---

[1] The following facts are taken from the summary judgment record and are viewed in the light most favorable to Gray, the nonmoving party.

one FedEx customer location, scan those packages with a FedEx tracker, place them on skids, shrink wrap them, load them onto a FedEx truck, and take them to the South Bend Station for loading.

During her employment at FedEx, Gray received copies of FedEx's Employee Handbook, which contained summaries of policies and procedures contained in FedEx's People Manual that governed her employment at FedEx. In addition, Gray received copies of FedEx's Acceptable Conduct Policy. On two occasions, Gray utilized FedEx's Guaranteed Fair Treatment ("GFT") Procedure, which permitted her to contest employment actions that she believed to be unfair. Gray was also aware of FedEx's internal EEO Complaint Process, by which employees could report employment discrimination or harassment and have those claims investigated and addressed by the company.

On a few occasions prior to the incidents alleged in the present complaint, Gray's managers counseled her verbally and in writing regarding problems with her work performance, such as failure to follow proper scanning and time card procedures, failure to pick up freight, break violations, losing the keys to her truck, and preventable vehicle accidents. Diane Vough, a FedEx Senior Manager to whom Gray indirectly reported the following observations:

> Gloria Gray reported indirectly to me during the last three and a half years she worked at the South Bend station. During that time, Gloria was directly supervised by several different managers who reported to me. I became aware that Gloria had a history of performance problems at the South Bend station and often did not respond well to her managers' attempt to counsel her about this [sic] problems and work with her on how to improve her performance. She did not take constructive criticism or instruction well and would often bristle and react defensively to any feedback – even positive feedback – from her managers.

Vough Declaration, ¶5.

In March 2004, Gray began reporting to a new manager, Mary Checkal ("Checkal"). Within a few weeks of this assignment, Gray believed that Checkal had targeted her as a prospective lesbian

3

partner.² Checkal made suggestive comments to Gray, which Gray states she discouraged and/or ignored. However, when asked in her deposition about the alleged comments, Gray responded as follows:

> Q. Now, ...did she ever say anything to you that you thought was sexual in nature or anything that you thought was inappropriate?
> A. No.

(Gray Dep. at 115)

> Q. [H]ad she ever said anything to you of a sexual nature?
> A. No, but the body language and the body movements that she made was very much implied.

(Gray Dep. at 129). Despite these answers, Gray avers that suggestive comments became increasingly part of her work environment.

Gray also testified that Checkal frequently called her into her office, closed the door, and began criticizing Gray's work performance. Gray believed her work performance was being unfairly criticized as a result of her rejection of Checkal's advances. According to Gray, Checkal would yell at her, "corner" her and get "in her face," speak to her in a harsh and demeaning manner, reprimand her, and single her out for performance issues in front of other employees. Checkal also threatened to fire Gray for being uncooperative and insubordinate. Gray also contends that on at least one occasion while she was in Checkal's office, Checkal placed her (Checkal's) hand between her (Checkal's) legs and touched herself in a sexually provocative manner in Gray's presence:

> Q: What was it that she was doing that – that you were upset about or found

---

²These statements, contained in Gray's affidavit, are part of the Motion to Strike, filed by FedEx, wherein FedEx argues that Gray is directly contradicting her deposition testimony by stating that she was subjected to "unwelcome sexual advances," "suggestive comments," and "unwelcome sexually provocative acts." To the extent that the statements directly contradict each other, the motion to strike is GRANTED. However, as will be demonstrated in the main text, even accepting the statements in Gray's affidavit, Gray has not demonstrated the existence of an objectively hostile work environment.

4

> offensive?
>
> A: ...[S]he always wanted the doors closed...and she'd always end up touching herself. She'd sit down touching herself and she – you know, and then she'd want me to come around to the computer screen so that she could write her OLCCs, and while she's there, she's – hands are all over herself. She never touched me but I just – I just found it offensive

(Gray Dep. at 113).

In June 2004, Gray reported to Diane Vough ("Vough"), FedEx Senior Manager of Station Operations, that she believed Checkal was "harassing" her. A factual dispute exists in the record as to whether Gray reported harassment of a sexual nature so as to provide Vough with notice of a sexual harassment allegation. Vough Declaration, ¶7: "At no time during this meeting did Gloria say that she believed Mary was sexually harassing her or that Mary had said or done anything sexually offensive."). In her Charge of Discrimination, Gray stated "I never informed anyone about the sexual harassment because I feared for my job." (Charge of Discrimination, August 26, 2005).[3] Moreover, in her deposition, Gray testified that she did not report any **sexual** harassment to Vough. Vough, in turn, viewed the problem between Checkal and Gray as a personality conflict not a sexual harassment problem:

> ...[I]t became clear to me that whenever Mary counseled Gloria regarding her work performance, Gloria felt she was being 'harassed' by Mary. I met with Gloria and Mary on more than one occasion to try and work things out between them. At none of these meetings did Gloria ever complain about Mary touching her or doing

---

[3]In paragraph 7 of her affidavit, Gray set out all of the instances of harassment mentioned thus far in this Opinion. In the following paragraph, she averred, "I informed Vough of the aforementioned harassment..." Gray Declaration, ¶8. To the extent that this paragraph suggests that Gray specifically told Vough about the instances of alleged "sexual harassment," this is directly contradicted by Gray's prior deposition testimony as well as her statement in the EEOC Charge of Discrimination wherein she states that she did not report harassment of a sexual nature to any management at FedEx. *See Gray Dep.* at 140: "Q: ...if you were being sexually harassed, why did you not tell anybody at FedEx about that? A: Because I wanted my job and there was so much retaliation." Accordingly, paragraph 8 of Gray's Affidavit is STRICKEN.

anything that could be construed as sexually inappropriate.

Vough Dec. ¶8.

In November 2004, Gray again was asked by Checkal to report to her office and Checkal, again, touched herself in a sexually provocative manner in Gray's presence.

Gray's work relationship with Checkal continued deteriorating. In the latter half of 2004 or the first half of 2005, both Gray and Checkal jointly met with Vough and jointly requested that Gray be moved to another workgroup under the supervision of another manager. Vough refused to move Gray to another workgroup:

> I told both of them that was not the way I did business, I thought they were both being overly sensitive, and they needed to find a way to get along. I also told them that I was not going to set a precedent at the station that would allow employees to just switch workgroups whenever they had a disagreement or conflict with their manager. I specifically told Mary that moving Gray to another manager was not in her best interest because, as a manager, she needed to learn how to manage all kinds of employees and get along with all types of personalities.

Vough Dec. ¶9.

Vough was the person responsible for making final decisions to discipline at the South Bend Station and, in particular, she was responsible for making disciplinary decisions as to Gray. Vough regularly consulted with Rich Watring ("Watring"), the Human Resources representative assigned to the South Bend Station, to ensure compliance with FedEx policies and procedures. In September 2004, Vough approved a Performance Reminder issued to Gray because she was having ongoing problems following proper scanning procedures.

In January 2005, Checkal reported to Vough that Gray failed to report to management that she had hit a fence post and damaged a FedEx truck she was driving. After reviewing the report and investigation of the incident compiled by Checkal, Vough consulted with Watring and decided

6

to discharge Gray for failing to report an accident. Gray, in turn, contested this decision under FedEx's GFT Procedure and the discipline was modified to a Warning Letter for falsification of a post-trip inspection of her vehicle in violation of the Acceptable Conduct Policy.

On February 25, 2005, Checkal "rubbed up against" Gray's back and legs with her breasts and knees as Checkal passed Gray in a hallway. A few days later, Checkal told Gray, that she (Gray) "worked for her, on or off the clock." Gray believed this to mean that Checkal wanted her to become a lesbian.

In the Spring of 2005, Gray testified that she made further complaints of harassing conduct by Checkal to Watring, but when asked if she was specific about her complaints, Gray testified that she did not mention sexually harassing conduct.

> Q. ...Did you ever tell Mr. Watring that you thought you were being sexually harassed.
> A. No. No.
> Q. Anything —
> A. Not sexually, no
> Q. Okay. But harassed by your manager, in terms of you said you talked about her calling you, went to her office, and writing you OLCCs?
> A. Yes, and always threatening me, you know, I could fire you right now, I could – you know, always threatening my job.

(Gray Dep. at 117-118).

On July 1, 2005, Checkal counseled Gray after receiving a customer complaint that freight was left at the customer's station. Later that same day, Checkal arrived at the Tech Data customer site where Gray was working to conduct a check-sit evaluation of Gray's work methods and procedures. Gray and Checkal became embroiled in a verbal confrontation after Gray was uncooperative with the evaluation. Checkal notified Vough about the incident. Vough, after investigating the incident, which included reading Checkal's written notes and those of other managers who had observed the confrontation, determined that Gray's actions constituted

7

insubordination serious enough to warrant a Warning Letter. Vough, along with Checkal, discussed this action with Watring to ensure compliance with FedEx policy. However, because this was the third disciplinary letter Gray had received within a period of less than 12 months, she was terminated in accordance with FedEx policy.

On August 23, 2005, Gray filed her "Charge of Discrimination" alleging she was subjected to a hostile work environment, sex discrimination, and retaliation. Upon receiving notice of Gray's Charge of Discrimination and the allegations therein, FedEx conducted an investigation of the events leading to Gray's termination. At the conclusion of that investigation, Vough determined that Checkal had equal culpability for the verbal confrontation that occurred at the Tech Data site in July, 2005. As a result, Checkal received a "Warning Letter" for her conduct on that day.

Mindful of these facts, the court now turns to the present motion for summary judgment.

## DISCUSSION

FedEx moves for summary judgment contending that Gray cannot prove the existence of a hostile work environment nor can she prove disparate treatment based on her gender so as to support a claim of sex discrimination. Similarly, FedEx asserts that Gray cannot establish a genuine issue of material fact that FedEx retaliated against her.

### A.  **Hostile Work Environment Sexual Harassment**

Title VII prohibits sex discrimination in the terms and conditions of employment. *Jackson v. County of Racine,* 474 F.3d 493, 499 (7th Cir.2007). To establish a Title VII claim based on workplace harassment, the Seventh Circuit has identified four elements: (1) the plaintiff must be the object of unwelcome harassment; (2) the harassment must be based on her sex; (3) it must be sufficiently severe and pervasive so as to alter the conditions of employment; and (4) there must

be a basis for employer liability. *Luckie v. Ameritech Corp.,* 389 F.3d 708, 713 (7th Cir.2004). FedEx asserts that Gray cannot demonstrate a genuine issue of material fact as to any of these elements but, the failure to meet any one of them is a sufficient basis with which to grant summary judgment. *Velez v. City of Chicago,* 442 F.3d 1043, 1048 (7th Cir. 2006) (choosing not to address all the elements because there was no basis for employer liability).

Evaluating the first two elements in light of the summary judgment factual record, Gray easily satisfies them. Gray's allegations that she was subjected to instances of Checkal groping herself in a sexual manner with Gray present, rubbing against her, and making comments is sufficient evidence to create a genuine issue of material fact that she was subjected to unwelcome harassment.

Likewise, Gray asserts that she was subjected to this behavior by Checkal because Checkal desired a sexual relationship with her. Sexual harassment claims may lie both in situations where an individual is harassed by someone of the opposite sex, as well as in situations where same-sex harassment is alleged. *See Hamm v. Weyauwega Milk Products, Inc.,* 332 F.3d 1058, 1062 (7th Cir.2003) (citing *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 79 (1998), and explaining that "in same-sex harassment cases, the central question is whether the harassment occurred 'because of plaintiff's sex.'"). Here, giving plaintiff the inferences to which she is entitled at this stage, she has raised a genuine issue of material fact that Checkal harassed her because of her sex.[4]

---

[4] This is a close call. The record is replete with evidence that Checkal and Gray had a difficult time working together and most, if not all of this evidence demonstrates a growing pattern of uncooperativeness on the part of both women. The evidence is slim, at best, to suggest that Checkal harassed Gray based on Gray's sex. In fact, the only evidence that could be construed in this way is that on a few occasions, Checkal groped herself in Gray's presence and on one occasion she walked "too closely" to Gray.

That aside, however, Gray must also show that the harassment she experienced was "severe or pervasive" enough to create an abusive environment and to alter the conditions of her employment. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986). But, whether an employer's conduct creates a hostile work environment is not subject to "a mathematically precise test" and "can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22-23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Relevant circumstances include "the frequency and severity of the conduct; whether it was threatening and/or humiliating or merely an offensive utterance; and whether the harassment unreasonably interfered with her work." *McPherson v. City of Waukegan,* 379 F.3d 430, 438 (7th Cir.2004).

Moreover, while Title VII prohibits an abusive working environment, it does not mandate admirable behavior from employers. *Russell v. Bd. of Trs.,* 243 F.3d at 343; *see also Faragher v. City of Boca Raton,* 524 U.S. at 788 ("Title VII does not become a 'general civility code.' "). To rise to the level of actionable harassment, the alleged misconduct must alter the conditions of the plaintiff's employment "in a significant way." *Perry v. Harris Chernin, Inc .,* 126 F.3d 1010, 1013 (7th Cir.1997) ("The workplace that is actionable is one that is 'hellish.' ") (citation omitted)."Simple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not amount to actionable harassment. *Faragher v. City of Boca Raton,* 524 U.S. at 788; *Adusumilli v.. City of Chicago,* 164 F.3d at 362 (holding that the Seventh Circuit has a "safe harbor for employers in cases in which the alleged harassing conduct is too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of her sex.") (citing *Galloway v. General Motors Serv. Parts Operations,* 78 F.3d 1164, 1168 (7th Cir.1996)).

Whether the harassment Gray experienced meets is sufficient to avoid summary judgment requires analysis of both an objective and subjective component. *See Hilt-Dyson v. City of Chicago,* 282 F.3d 456, 463 (7th Cir.2002). The subjective component asks whether the plaintiff found the environment offensive or abusive while the objective component inquires as to whether a reasonable person in the plaintiff's position would find the environment hostile. *Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998).

Gray states that the harassment was unwelcomed by her and she complained about it and, for purposes of the record, the Court will presume this meets the subjective standard. But even though she may have found the harassment subjectively severe and pervasive, the review of the evidence shows that no reasonable person could have found the harassment so severe or pervasive so as to be objectively hostile.

The fundamental principle here is that the conduct alleged must be severe, pervasive, or as may sometimes occur, a combination of both so as to alter the conditions of the plaintiff's employment. *See Lapka v. Chertoff*, 517 F.3d 974 (7th Cir. 2008) ("[W]e have repeatedly stressed that the phrase "severe or pervasive" is disjunctive."); *Hostetler v. Quality Dining, Inc.,* 218 F.3d 798, 808 (7th Cir.2000) ("Harassment need not be severe *and* pervasive to impose liability; one or the other will do."); *Tademy v. Union Pacific Corp*. 2008 WL 852491, 10 (10th Cir. 2008) ("Pervasiveness and severity are independent and equal grounds" upon which a plaintiff may establish this element of a hostile environment claim.").

Severe refers to the intensity and gravity of the allegedly harassing conduct; sexual assaults or other similar intimate and forcible acts fall within this category even when they are isolated because they threaten the plaintiff's safety in her work environment thereby altering her conditions

of employment. *See, e.g.*, *Lapka,* 517 F.3d at 970 ("It goes without saying that forcible rape is "unwelcome physical conduct of a sexual nature."); *Worth v. Tyer,* 276 F.3d 249, 268 (7th Cir.2001) (finding that direct contact with an intimate body part "constitutes one of the most severe forms of sexual harassment."); *Hostetler,* 218 F.3d at 809 (finding conduct severe when fellow employee not only forcibly kissed plaintiff but later cornered plaintiff and attempted to remove her brassiere); *Smith v. Sheahan,* 189 F.3d 529, 532 (7th Cir.1999) (fellow employee physically assaulted plaintiff and had history of verbally abusing female co-workers).

Pervasive, on the other hand, denotes the frequency of the allegedly harassing conduct, that is, a workplace that is permeated with discriminatory conduct such as intimidation, ridicule, or insults on such a constant basis so as to make the workplace unbearable. See *Ryan v. Town of Schererville, Ind.*, 2005 WL 1172614, 11 (N.D.Ind.,2005) (denying summary judgment where plaintiff dealt daily with insults, and sexually derogatory name calling).

Reading the facts in the light most favorable to Gray, she has not alleged conduct falling within either of these categories. Certainly, there is no evidence of severe conduct – no physical assaults or forcible interactions between Gray and Checkal. In fact, most of the instances to which Gray took offense involved Checkal's touching of her own body through her clothes, not Gray's body. There were no direct sexual advances or any physical touching of Gray other than a questionable incident when Checkal passed by Gray on one occasion. All of the incidents alleged by Gray fall into a second category of conduct, that is, inappropriate, or vulgar gestures, and humiliating or embarrassing comments.

However, when viewed in isolation or in tandem, this conduct does not rise to the level of actionable sexual harassment. The Supreme Court has held that "the objective severity of the

harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.' " *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998). Indeed, Checkal's conduct, while inappropriate, is similar to that in other cases finding no actionable sexual harassment. *Hilt-Dyson,* 282 F.3d at 463 (finding no hostile work environment where supervisor allegedly rubbed the plaintiff's back, squeezed her shoulder, stared at her chest, and told her to open her blazer during a uniform inspection); *Baskerville v. Culligan Int'l,* 50 F.3d 428, 430 (7th Cir.1995) (finding no actionable harassment where the supervisor called the plaintiff a "pretty girl," made grunting sounds at the plaintiff, and stated that a public announcement to the plaintiff was a request that "all pretty girls run around naked"); *Weiss v. Coca-Cola Bottling Co.,* 990 F.2d 333, 337 (7th Cir.1993) (finding no actionable harassment where supervisor asked plaintiff for dates on repeated occasions, twice attempted to kiss her, placed his hand on her shoulder several times, and placed "I love you" signs in her work area); *Hockman v. Westward Commc'ns, LLC,* 407 F.3d 317, 328 (5th Cir.2004) (holding that comments to plaintiff about another employee's body, slapping plaintiff on the behind with a newspaper, grabbing or brushing up against plaintiff's breasts and behind, and attempting to kiss plaintiff were not severe as a matter of law); *Shepherd v. Comptroller of Pub. Accounts,* 168 F.3d 871, 871-75 (5th Cir.1999) (holding that several inappropriate comments, including "your elbows are the same color as your nipples," and touchings, including rubbing plaintiff's arm from shoulder to wrist, were not severe); but see, *Harvill v. Westward Communications, L.L.C.* 433 F.3d 428, 435-36 (5th Cir. 2005) (holding that unwanted touching of plaintiff's breasts and buttocks over a seven-month period, despite her protests on every occasion, qualified the behavior as sufficiently severe or pervasive).

Although it is unfortunate that Gray had to endure the behavior she did in her workplace, it is evident from the record that this conduct rings truer to the side of coarse and boorish behavior than to actionable sexual harassment. Indeed, in these types of cases, "the difficulty is drawing the line between merely some offensive activity and an objectively hostile environment." *McPherson*, 379 F.3d 430, 437-38 (7th Cir. 2004). In *McPherson*, the Court cited much precedent for the proposition that actions, which, although vulgar or boorish, are spread out over time and are few and far between, are neither severe nor pervasive to the extent necessary to show that an objectively hostile work environment existed. *Id.* (citing *Hilt-Dyson,* 282 F.3d at 463-64; *Patt v. Family Health Sys., Inc.,* 280 F.3d 749, 754 (7th Cir.2002); *Adusumilli v. City of Chicago,* 164 F.3d 353, 361-62 (7th Cir.1998)). That is what the evidence reveals occurred in this case and thus, Gray's claim of a hostile work environment fails. Accordingly, FedEx's Motion for Summary Judgment as to this claim is, therefore, GRANTED.[5]

**B.      Sex Discrimination**

Gray next claims that FedEx improperly discriminated against her because of her sex by disciplining and ultimately, terminating her, and not male employees, for having received three disciplinary notices within a year. Under Title VII of the Civil Rights Act of 1964, it is unlawful for employers "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e-

---

[5] Gray's claim also fails for a second reason, that is, that she has not demonstrated a basis for employer liability. An employer cannot be liable for failing to remedy a hostile work environment when it has not been placed on notice of the hostile work environment. *See Andonissamy v. Hewlett-Packard Co.,* 547 F.3d 841 (7th Cir. 2008) (finding no basis for employer liability when allegation of national origin harassment surfaced for the first time in the litigation). Here, there is no evidence from which a jury could infer that FedEx had notice of the alleged sexual harassment by Checkal prior to her filing the EEOC Charge of Discrimination. Indeed, even Gray admits that she did not specifically inform anyone at FedEx about the sexual nature of the harassment from which she suffered.

2(a)(1). Gray has presented no direct evidence of discrimination, so she must rely on indirect proof using the familiar burden-shifting method under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04(1973). Ordinarily under *McDonnell Douglas,* a plaintiff must make a *prima facie* case of gender discrimination by showing: (1) she is a member of the protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) her employer treated similarly situated male employees more favorably. *Peirick v. Indiana University-Purdue Univ. Indianapolis Athletics Dept.,* 510 F.3d 681, 687 (7th Cir.2007). In claims of discriminatory discipline such as this one, "the second and fourth prongs of *McDonnell Douglas* merge." *Lucas v. Chicago Transit Auth.,* 367 F.3d 714, 728 (7th Cir.2004). Accordingly, the analysis of the employer's expectations falls by the wayside, and a "plaintiff must establish that [s]he received dissimilar-and more harsh-punishment than that received by a similarly situated employee who was outside the protected class." *Id.* A similarly situated employee need not be "identical," but the plaintiff must show that the other employee "dealt with the same supervisor, [was] subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [his] conduct or the employer's treatment of [him]." *Gates v. Caterpillar, Inc.,* 513 F.3d 680, 690 (7th Cir.2008); *Crawford v. Ind. Harbor Belt RR. Co.,* 461 F.3d 844, 846 (7th Cir.2006) (holding that a similarly situated employee is one who is "comparable to plaintiff in all *material* respects").

Gray has not identified any similarly situated male employee who was treated any differently than she was. Instead, Gray argues that because Checkal did not receive her Warning Letter until four months after Gray, this is sufficient to demonstrate that Checkal was treated more favorably than her with respect to this one incident. The problem, however, is that Checkal and

15

Gray are not similarly situated. While they engaged in a verbal confrontation with one another, Checkal was Gray's manager. Gray was given a Warning Letter for insubordination and, it so happened, that this was Gray's third disciplinary notice in a period of 12 months. Her termination was in accordance with FedEx policy and followed from the prior receipt of two other disciplinary letters. Checkal, however, was not in this same position. While she was ultimately disciplined for the same incident she was not subject to termination for her conduct because she did not have two previous disciplinary letters in the preceding 2 months. All told, Gray has failed to produce evidence of any employee, male or female, with a similar job description and past inappropriate conduct that received disparate treatment by Fed Ex, and Gray cannot establish a *prima facie* case lacking this evidence.

Even if she had such evidence, though, Gray would still have to show that FedEx's legitimate and non-discriminatory reason for its action was pretext (i.e., a "lie"). *Perez v. Illinois,* 488 F.3d 773, 776 (7th Cir.2007). She has failed to do so. Gray's stated reasons for disciplining and ultimately terminating her employment, i.e., that she was insubordinate to her supervisor and that she had three disciplinary notices within 12 months, are sufficiently nondiscriminatory. Nothing in the record supports a finding that these reasons were fabrications, Gray's bald statement that the disciplinary notices were fabricated notwithstanding. Without such evidence, summary judgment is appropriate. Thus, FedEx's Motion for Summary Judgment on Gray's sex discrimination claim is GRANTED.

## C.  **Retaliation**

Finally, Gray also maintains that FedEx retaliated against her for opposing discrimination, that is, for opposing Checkal's inappropriate behavior towards her. Title VII's anti-retaliation

provision prohibits employers from discriminating against employees for opposing discrimination on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C.b § 2000e-3(a); *Boumehdi v. Plastag Holdings, LLC,* 489 F.3d 781, 792 (7th Cir.2007). A plaintiff alleging retaliation can prove her case either by the direct or indirect method of proof. *Szymanski v. County of Cook,* 468 F.3d 1027, 1029 (7th Cir.2006). Under the direct method, direct evidence of retaliation is not required. *Gates v. Caterpillar, Inc.,* 513 F.3d 680, 686 (7th Cir.2008) ("This Court recently has clarified that ... 'circumstantial evidence that is relevant and probative on any of the elements of a direct case of retaliation may be admitted and, if proven to the satisfaction of the trier of fact, support a case of retaliation.' " (quoting *Treadwell v. Office of Ill. Sec'y of State,* 455 F.3d 778, 781 (7th Cir.2006))). Rather, a plaintiff must show through either direct or circumstantial evidence that (1) she engaged in statutorily protected activity; (2) she suffered an adverse action taken by the employer; and (3) there was a causal connection between the two. *Dorsey v. Morgan Stanley,* 507 F.3d 624, 627 (7th Cir.2007). Under the indirect method, a plaintiff must establish a prima facie case of retaliation by showing that (1) she engaged in statutorily protected activity; (2) she met her employer's legitimate expectations; (3) she suffered an adverse action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Nichols v. S. Ill. Univ.-Edwardsville,* 510 F.3d 772, 785 (7th Cir.2007). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to produce a non-discriminatory reason for its employment action. *Id.* If the employer meets its burden of production, the burden of proof then remains with the plaintiff to show that the employer's proffered reason is pretextual. *Id.*

Here, FedEx's argument is two-fold. First, it contends that Gray cannot establish a prima

facie case of retaliation because she did not engage in protected activity and she cannot demonstrate that she was performing her job satisfactorily. Alternatively, FedEx argues that Gray has no evidence to rebut the legitimate non-discriminatory reason given for Gray's discipline and termination.

To establish that she had engaged in a protected activity, Gray was required to demonstrate that she complained about an act that she " 'reasonably believed in good faith ... violated Title VII.' " *Fine v. Ryan Int'l Airlines,* 305 F.3d 746, 752 (7th Cir.2002) (quoting *Alexander v. Gerhardt Enters., Inc.,* 40 F.3d 187, 195 (7th Cir.1994)); *see Dey v. Colt. Constr. & Dev. Co.,* 28 F.3d 1446, 1457-58 (7th Cir.1994). Only a groundless claim "resting on facts that no reasonable person possibly could have construed as a case of discrimination" could not constitute a statutorily protected activity. *Fine,* 305 F.3d at 752. And a mistake as to the merits of a complaint does not cost an employee the protection of Title VII. *Mattson v. Caterpillar, Inc.,* 359 F.3d 885, 892 (7th Cir.2004).

Here, Gray wrote in her EEOC Charge of Discrimination that she did not complain about the sexual harassment she now alleges to have occurred because she feared losing her job. By not complaining to anyone at FedEx about this conduct, she is hard-pressed to establish that she engaged in any protected activity which a reasonable person would perceive as violative of Title VII. Nevertheless, giving Gray the benefit of any disputes in the record, she may have reasonably believed that by complaining generally of "harassment" she was, in fact, invoking the protections of Title VII. But, as is evident from the record below, Gray still cannot establish a case of retaliation under the other elements.

Whether Gray was performing satisfactorily, requires careful analysis since it is closely

intertwine with the legitimate non-discriminatory reason offered by Gray for her termination and the issue of pretext. *See Hague v. Thompson Distrib. Co.,* 436 F.3d 816, 823 (7th Cir.2006); *see Coco v. Elmwood Care, Inc.,* 128 F.3d 1177, 1179 (7th Cir.1997). *See Olsen v. Marshall & Ilsley Corp.,* 267 F.3d 597, 600 (7th Cir.2001) (where *prima facie* analysis would overlap substantially with the question of pretext, the court may address the two together). However, as the court has already noted, there is no evidence from Gray that the legitimate non-discriminatory reason offered by FedEx is a lie. *See Gordon* v. *United Airlines, Inc.,* 246 F.3d 878, 888 (7th Cir.2001) (to establish pretext, plaintiff must demonstrate that employer's proffered reason was unworthy of belief).

Indeed, Gray does not dispute that the Warning Letter she received was, in fact, her third warning in 12 months. Nor does she dispute that it was FedEx's policy to terminate individuals after they have received three disciplinary notifications within a twelve month period. Accordingly, she has not demonstrated any evidence of a retaliatory motive so as to raise a genuine issue of material fact on this claim. FedEx's Motion for Summary Judgment on the retaliation claim is GRANTED.

## **Conclusion**

Based on the foregoing, FedEx's Motion for Summary Judgment is GRANTED as to all claims. FedEx's Motion to Strike is GRANTED to the extent set forth in this Opinion. The Clerk is directed to enter judgment in favor of the Defendant.

Entered: This 7th day of February, 2009

s/ William C. Lee<br>
United States District Court